## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| CRAIG MCCARTER ET AL., | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *     Civil No. 24-2515-BAH |
| TWO FARMS, INC. ET AL., | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiffs Craig McCarter, Mary Ellis, minor child A.F., and the estate of Paul McCarter (the "Estate") brought suit against Two Farms, Inc. ("Two Farms"), Cloverland Management Corporation ("CMC"), Cloverland Dairy Limited Partnership ("Cloverland Dairy"), and Cloverland Real Estate IV, LLC ("Cloverland Real Estate") (collectively, "Defendants") alleging wrongful death and negligence claims. ECF 1-2.[1] Pending before the Court is Defendants' motion to dismiss and transfer venue. ECF 9. Plaintiffs filed an opposition, ECF 13, and Defendants filed a reply, ECF 21. Three additional motions are also pending before the Court: Plaintiffs' motion for leave to issue subpoenas, ECF 14[2]; Defendants' motion for a protective order and sanctions,

---

[1] Defendants removed this action from the Circuit Court for Baltimore City on August 29, 2024 and included the unredacted Circuit Court complaint with the notice of removal at ECF 1-2. A standalone copy of the unredacted complaint was filed at ECF 4, while a redacted copy, omitting the full name of minor child A.F., was filed at ECF 6. Because each filing generated new ECF numbers on top of previous ones, it is difficult to read the ECF page numbers on the copies of the unredacted complaint at ECFs 4 and 6. The Court will therefore reference the unredacted version of the complaint found at ECF 1-2 but will continue to use only A.F.'s initials as in the redacted version.

[2] Defendants filed a response in opposition to this motion, ECF 15, and Plaintiffs filed a reply, ECF 16.

ECF 17[3]; and Plaintiffs' motion to supplement previous filings (ECFs 13 and 14), ECF 19. All filings include memoranda of law, while ECFs 9, 13, 14, 17, and 19 include exhibits.[4] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Plaintiffs' motion for leave to issue subpoenas is DENIED; Plaintiffs' motion to supplement is GRANTED in part and DENIED in part; Defendants' motion to dismiss is DENIED; Defendants' motion to transfer venue is GRANTED; and Defendants' motion for sanctions is GRANTED in part and DENIED in part. The Court further ORDERS that ECF 1, containing the full name of minor child A.F., and ECF 13, containing graphic photographs of Paul McCarter at ECF 13-10, be SEALED.[5]

## I.    BACKGROUND

This action arises out of the tragic death of Paul McCarter ("McCarter") in the Royal Farms store located at 20579 DuPont Boulevard, Georgetown, Delaware 19947 ("Royal Farms Store" or "the Store"). ECF 1-2, 5 ¶ 5. Plaintiffs allege that all Defendants "own[ed], supervise[d], manage[d] and/or operate[d]" the Royal Farms store in question from at least 2019 through the time this action was filed. *Id.* at 5 ¶ 5, 6 ¶ 6, 7 ¶¶ 7–8.

On the evening of September 7, 2022, Paul McCarter was at the Royal Farms Store as a "lawful patron and invitee." ECF 1-2, at 13 ¶ 14. At approximately 9:30 p.m., third-party Kevin Shorter entered the Store and "struck [ ] McCarter multiple times with a baseball bat." *Id.*

---

[3] Plaintiffs filed a response in opposition to Defendants' motion, ECF 20, and Defendants filed a reply, ECF 22. Plaintiffs provided further supplementation to their response at ECF 23. ECFs 20 and 23 also include exhibits.

[4] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[5] Federal Rule of Civil Procedure 5.2(a) provides that only a minor's initials may be used in filings. Courts may also seal "sensitive medical or personal identification information[.]" *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011)

According to Plaintiffs, "before and after each time [ ] Shorter struck [ ] McCarter" with the bat, Shorter exited and then re-entered the Store. *Id.* According to Plaintiffs, Shorter did not know McCarter, nor did McCarter know Shorter; Plaintiffs aver that the beating was not a "targeted incident" and that McCarter "did not instigate or escalate" the encounter. *Id.* at 14 ¶ 14. McCarter suffered "severe injuries" from the attack and was admitted to the hospital for inpatient medical care. *Id.* at 13 ¶ 14. Though he remained hospitalized and received treatment for several days following the attack, McCarter sadly passed on September 13, 2022, at the age of 38. *Id.* at 14 ¶ 14.

Plaintiff Craig McCarter is the surviving father of Paul McCarter, Plaintiff Mary Ellis is his surviving mother and the administrator of the Estate, and A.F. is McCarter's surviving child.[6] ECF 1-2, at 4 ¶¶ 1–4. Plaintiffs are residents of Tennessee. *Id.* Plaintiffs raise two claims: Count I is a claim for "wrongful death/negligence" brought by individual Plaintiffs against all Defendants, while Count II is a survival action for negligence brought by the Estate against all Defendants. *Id.* at 16–18 ¶¶ 18–23. Both claims center on Plaintiffs' argument that Defendants "were negligent and failed to comply" with one or all of the security procedures in place at the Store, and that such negligence "directly and proximately caused the reasonably foreseeable incident" of Shorter's attack on McCarter and McCarter's subsequent death. *Id.* at 15 ¶ 15.

In support of this argument, Plaintiffs aver that, at the time of the attack, Defendants had certain security "policies, procedures, and/or protocols in place" for Defendants' agents and employees at the Royal Farms Store. ECF 1-2, at 12–13 ¶ 13. Per Plaintiffs, these included:

(1) To have adequate security-related policies and procedures in place;

---

[6] Plaintiffs refer to A.F. as the "alleged" surviving child of Paul McCarter as "[i]t is unknown whether [A.F.] is the surviving child of the deceased Paul McCarter, because a paternity test has been previously administered to determine whether [A.F.] is the surviving child of the deceased Paul McCarter and the paternity test provided a negative result." ECF 1-2, at 5 ¶ 4.

(2) To have adequate security-related policies and procedures related to de-escalating situations that may lead to injury of persons;

(3) To have adequate security personnel;

(4) To have adequate security-related training for the Defendants' employees and/or Defendants' agents; and

(5) To have adequate video surveillance.

*Id.* at 13 ¶ 13. These policies and procedures, Plaintiffs say, are "incidental to Defendants' agents' and/or Defendants' employees' job duties" at the Store; are performed "in furtherance of the Defendants' business objectives" at the Store; are "designed for the protection of Defendants' patrons, the public, and Defendants' agents and/or Defendants' employees" at the Store; and are "required to be complied with." *Id.* At the time McCarter was attacked, Plaintiffs aver that "there were no security personnel" at the Store and that employees "were not adequately trained to de-escalate the incident and/or prevent the incident from happening." *Id.* at 14 ¶ 14. In addition, Plaintiffs contend that Defendants had "actual knowledge and notice of crimes" that occurred at the Store prior to the September 7, 2022 attack, and that such crimes included "assaults, batteries, robberies and/or deadly weapon-related crimes." *Id.* at 13 ¶ 13.

## II.    **LEGAL STANDARD**

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### A.    Consideration of Exhibits

Courts may, at the motion to dismiss stage, consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Plaintiffs attach several exhibits to their response, including, *inter alia*, deposition transcripts, *see* ECF 13-7; what appear to be copies of Royal Farms training handouts, *see* ECF 13-11; screenshots of the profiles of Defendants' employees taken from the website LinkedIn, *see* ECF 13-12; and news coverage of the assault, *see* ECF 13-15. The response also includes an exhibit containing graphic photos of Paul McCarter in the aftermath of the assault and at the hospital. ECF 13-10. Plaintiffs also included two LinkedIn screenshots in the complaint. *See* ECF 1-2, at 10–11.

However, the matter before the Court is a motion to dismiss, which tests only the sufficiency of Plaintiffs' complaint. Virtually all of Plaintiffs' purported exhibits not only are not referenced in the complaint but also are not "integral" to their claims in that none of the exhibits appear to "give[] rise to the legal rights asserted" in the complaint. *Chesapeake Bay Found.*, 794 F. Supp. 2d at 611. The Court will therefore not incorporate them into its analysis.[7]

## III.   ANALYSIS

The Court considers each pending motion in turn.

### A.    Plaintiffs' Motion for Leave to Issue and Serve Subpoenas

Plaintiffs move for leave to issue and serve "subpoenas for production of documents to [ ] Defendant Two Farms . . . and the Delaware State Police." ECF 14, at 1. Plaintiffs seek production of documents related to the criminal investigation of the assault, the security footage from the Royal Farms Store, Defendants' security-related policies, and Paul McCarter's autopsy report. *Id.* at 5. Defendants respond that Plaintiffs' request is premature, as no Rule 26(f) conference has yet taken place, nor has a scheduling order been entered in accordance with Local Rule 104-4. ECF 15, at 3.

Courts may allow early discovery to take place for "good cause," as when "preservation of evidence" is at issue. *Hossfeld v. Gov't Emps. Ins. Co.*, 88 F. Supp. 3d 504, 512 (D. Md. 2015). Here, Plaintiffs do not attempt to make an argument that there is good cause to permit early discovery, and there is otherwise no indication that such cause exists. Plaintiffs merely say that the Court "must" grant them leave to issue and serve subpoenas "given the circumstances," but the

---

[7] Defendants also attach a few exhibits to their motion to dismiss, including, in addition to another copy of Plaintiffs' Circuit Court complaint, a printout from Google Maps and a table purportedly showing the time intervals from filing date to trial commencement for federal civil jury trials. *See* ECFs 9-4 and 9-5. These exhibits appear to relate to Defendants' request for transfer of venue and will be considered for the reasons outlined in the corresponding section of the Court's analysis.

only "circumstances" they point to are that the requested documents are currently in the sole possession of either Defendants or the Delaware State Police. ECF 14, at 8. Plaintiffs provide no basis for why this fact is relevant to the consideration of a request for early discovery. More importantly, Plaintiffs fail to offer any reason why such discovery cannot happen in accordance with the usual discovery procedures. Plaintiffs' motion to for leave to issue and serve subpoenas is denied.

### B.   Plaintiffs' Motion to Supplement

Plaintiffs have also filed what they style as a motion to "supplement" to their previous pleadings. ECF 19. Plaintiffs ask that the unredacted version of the Circuit Court complaint, attached as an exhibit to both ECF 13 and ECF 14 (*see* ECF 13-5 and ECF 14-3), be replaced by the redacted version provided at ECF 19-2. ECF 19, at 1. Plaintiffs also ask that the unredacted copy of Paul McCarter's death certification, provided at ECF 13-9, be replaced with the version attached at ECF 19-3, which redacts Paul McCarter's social security number and date of birth. *Id.* Finally, Plaintiffs seek to withdraw a copy of an email from Plaintiffs' counsel purporting to issue a subpoena to the police department of Georgetown, Delaware, which they previously provided as an exhibit in ECF 13-15, at 2–8. *Id.* In light of the provisions for privacy protections articulated in Federal Rule of Civil Procedure 5.2, Plaintiffs are permitted to replace the unredacted versions of the Circuit Court complaint at ECF 13-5 and ECF 14-2 with the redacted copy at ECF 19-2. Plaintiffs are also permitted to replace the unredacted copy of McCarter's death certification at ECF 13-9 with the redacted version at ECF 19-3. However, the exhibit with a copy of the email and subpoena, ECF 13-15, at 2–8, will not be stricken. Plaintiffs advance no argument in support of striking this exhibit, and because it appears to be relevant to Defendants' motion for sanctions, which the Court addresses in greater detail below, it will remain in the record.

## C.   Motion to Dismiss

Defendants move to dismiss Plaintiffs' complaint, arguing that it fails to state a claim for negligence under the relevant Delaware standard. ECF 9-1, at 10. Defendants contend that because the complaint alleges "nonfeasance" or an omission to act, Delaware law[8] requires a "special relation" between parties in order to give rise to a duty of care. *Id.* at 11. Plaintiffs' complaint, Defendants argue, evinces no such evidence of "a special relationship between [McCarter] and any of the Defendants," and so the complaint fails to state a claim for negligence. *Id.* at 10.

"To prevail on a claim of negligence" under Delaware law, a plaintiff "must allege that: (1) [defendant] owed [plaintiff] a duty of care; (2) that [defendant] breached that duty; and (3) that [defendant's] breach proximately caused [plaintiff's] injury." *Murray v. Mason*, 244 A.3d 187, 194 (Del. Super. 2020). "To prevail on a wrongful death claim, Plaintiffs must prove the same legal duty required for a negligence claim." *Rahaman v. J.C. Penney Corp.*, Civ. No. N15C-07-174, 2016 WL 2616375, at *7 (Del. Super. May 4, 2016). "Delaware courts look to the Restatement (Second) of Torts" ("Restatement") to distinguish between "malfeasance" and "nonfeasance": anyone who takes an affirmative action has a general duty to "exercise the care of a reasonable man to protect [others] against an unreasonable risk of harm to them arising out of

---

[8] "'Maryland adheres to the *lex loci delicti* rule' to determine the applicable law in tort actions." *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (quoting *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). An injury "is deemed to occur where the plaintiff first suffers harm[.]" *Id.* (citing *Burnside v. Wong*, 986 A.2d 427, 438 (Md. 2010)). Further, Maryland law provides that, in a wrongful death action involving conduct out of state, Maryland courts "shall apply the substantive law" of the jurisdiction where "the wrongful act occurred," though the court "shall apply its own rules of pleading and procedure." Md. Code Ann., Cts. & Jud. Proc. § 3-903(a)–(b). Here, the complaint specifically alleges that the relevant injury occurred in Delaware. *See* ECF 1-2, at 5 ¶ 5. The parties do not dispute that Delaware law governs Plaintiffs' negligence claims. *See* ECF 9-1, at 10 and ECF 13-2, at 14. Accordingly, the Court will apply Delaware law in evaluating Defendants' motion to dismiss Plaintiffs' negligence claims.

8

the act," while someone who "merely omits to act" generally does not owe a duty of care, "unless there is a special relationship between the actor and the other which gives rise to the duty." *Murray*, 244 A.3d at 194 (quoting *Doe v. Bradley*, Civ. No. N10C-05-023, 2011 WL 290829, at *5 (Del. Super. Jan. 21, 2011)); *see also* Restatement § 302 Comment (a) and § 314 Comment (c).

Defendants argue that the complaint fails to allege facts giving rise to an inference either that Defendants owed a duty of care to Paul McCarter or that some kind of special relationship existed between the two. ECF 9-1, at 11. This argument is unavailing. Following the Restatement, Delaware law acknowledges certain enumerated special relationships, including the one between "[a] possessor of land who holds it open to the public" and "members of the public who enter in response to his invitation." *Bradley*, 2011 WL 290829, at *6 (citing Restatement § 314A). This "special relationship" gives rise to a possessor's duty to "protect [invitees] against unreasonable risk of physical harm[.]" *Id.* Delaware courts have held that this definition encompasses the relationship between an owner of a store and their business invitees. *See Callaway v. Scrivner, Inc.*, Civ. No. 90C-AP1, 1991 WL 113437, at *3 (Del. Super. June 12, 1991); *Higgins v. Walls*, 901 A.2d 122, 138 (Del. Super. 2005). Here, Plaintiffs' complaint clearly states that Defendants owned, supervised, managed, and/or operated the Royal Farms Store, *see* ECF 1-2, at 7 ¶ 8, and that McCarter was a "lawful patron and invitee" of the Store, *id.* at 13 ¶ 14. The Court is therefore satisfied that Plaintiffs have pleaded the existence of a special relationship between Defendants and McCarter, and therefore that Defendants owed McCarter a duty.

However, the Court is skeptical that Plaintiffs are required to plead the existence of a special relationship when Delaware law is otherwise clear on the relevant considerations for cases such as the one at bar, which involve the potential "liability [of] a business owner for injuries suffered by a business invitee that resulted from the criminal conduct of third parties." *Robinson*

*v. Ebke*, Civ. No. 23-308, 2025 WL 1555377, at *5 (D. Del. June 2, 2025). In the seminal case *Jardel Co. v. Hughes*, the Supreme Court of Delaware explicitly affirmed that property owners have "a residual obligation of reasonable care to protect business invitees from the acts of third persons" and that "incidents of criminal activity" on the property "provide a duty to foresee specific criminal conduct." 523 A.2d 518, 525 (Del. 1987). In other words, Delaware law recognizes the duty of an operator of a store "to provide some level of security against crimes committed by third parties when those crimes were foreseeable." *June v. Wal-Mart Stores E., L.P.*, Civ. No. K23C-05-005, 2025 WL 932691, at *2 (Del. Super. Ct. Mar. 27, 2025) (citing *Jardel*, 523 A.2d at 525 and *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 692 (Del. Super. 1989), *aff'd*, 571 A.2d 786 (Del. 1989)). A crime is deemed "foreseeable," and a property owner is found to be "on notice" of the likelihood of "personal injury," when there has been "repetition of criminal activit[ies]" including both property crimes and crimes of violence. *Jardel*, 523 A.2d at 525–26.

Here, Plaintiffs allege that Defendants did have "actual knowledge and notice of crimes" that occurred at the Royal Farms Store prior to the assault on McCarter, and note that such crimes included "assaults, batteries, robberies, and/or deadly weapon-related crimes." ECF 1-2, at 15 ¶ 15. This sufficiently alleges that potentially violent crime within the Store was foreseeable, and thus that Defendants owed a duty to McCarter to provide some degree of security against crimes committed by third parties. Finally, regardless of the source of the duty, the Court determines that Plaintiffs have satisfied the other elements of their claims in alleging that Defendants breached the duty of care owed to McCarter by failing to maintain or follow proper security procedures, *see id.* at 12 ¶ 13, and that such failures resulted in the assault and death of McCarter, *see id.* at 15 ¶ 15. Defendants' motion to dismiss is therefore denied.

10

The Court concludes this portion of its analysis by briefly addressing Defendants' secondary argument that Plaintiffs' complaint should be dismissed because it fails to "establish" that Defendants CMC, Cloverland Dairy, and Cloverland Real Estate "exercised actual management of the [ ] Royal Farms [S]tore." ECF 9-1, at 13. However, Plaintiffs are not required to "establish," that is, *prove*, the facts at this stage in the litigation. *C.f. Doe v. Massage Envy Franchising*, Civ. No. S20C-05-005, 2024 WL 3220281, at \*16 (Del. Super. Ct. June 28, 2024) (determining that the question of franchisor's exercise of "legal control" over a premises, versus a franchisee's, could not be established at the motion to dismiss stage where key facts, including whether the franchisor knew of dangerous conditions on the franchisee's premises and whether it was involved in establishing "policies and procedures for [ ] franchisees to follow when complaints arise," were unknown or disputed). A motion to dismiss tests the legal sufficiency of a plaintiff's complaint on the surface of the complaint itself, and plaintiff is not required to prove their factual contentions to survive dismissal.[9] Rather, courts are to "accept as true all of the factual allegations contained in the complaint." *Erickson,* 551 U.S. at 94. Here, the Court has determined that the allegations of the complaint are sufficient to state plausible claims for relief. Defendants' argument is inapplicable at this stage.

### D. Transfer

Defendants ask the Court to transfer this action to the United States District Court for the District of Delaware, on the grounds that Maryland is not the Plaintiffs' home state, that Delaware is more convenient for witnesses and parties, and that the events in question occurred in Delaware. ECF 9-1, at 16–18. 28 U.S.C. 1404(a) provides that "[f]or the convenience of the parties and

---

[9] The Court notes that Defendants themselves do not offer any evidence in support of their position that CMC, Cloverland Dairy, and Cloverland Real Estate did not exercise substantive managerial control over the Royal Farms Store.

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision "was intended to enlarge the common law power of the court under the well-established doctrine of *forum non conveniens* and was enacted to prevent the waste of time, energy and money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (quoting *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)); *see also Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955). Courts typically consider (1) the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice in evaluating a motion to transfer, though ultimately "the decision whether to transfer is committed to the sound discretion of the district court." *Id.* "In reviewing a motion to transfer, [the] [c]ourt may consider evidence outside the pleadings." *Menk v. MITRE Corp.*, Civ. No. 23-00053-JRR, 2024 WL 327087, at *4 (D. Md. Jan. 29, 2024) (alteration in original) (quoting *Siemens Energy, Inc. v. CSX Transp., Inc.*, Civ. No. 15-1072-RDB, 2016 WL 1059261, at *2 n.2 (D. Md. Mar. 17, 2016)); *see also Ancient Sun Nutrition, Inc. v. Or. Algae, LLC*, Civ. No. 10-140, 2010 WL 3719503, at *1 (W.D.N.C. Sept. 17, 2010) ("Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings.").

In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper. *Lynch*, 237 F. Supp. 2d at 617 (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992)). Courts must evaluate whether the proposed transferee district "is a proper venue" and whether "the transferee court would have personal jurisdiction over the defendant." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md.

2009) (internal citation omitted). 28 U.S.C. § 1391(b) provides that venue is "proper" in either "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or in "a judicial district in which a substantial part of the events . . . giving rise to the claim occurred[.]" "In determining whether a substantial part of the events occurred in a state, the Court should review 'the entire sequence of events underlying the claim.'" *Karn v. PTS of Am., LLC*, Civ. No. 16-3261-GJH, 2019 WL 556970, at *5 (D. Md. Feb. 11, 2019) (quoting *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). Here, it is clear that the sequence of events underlying the claim—that is, the assault and death of Paul McCarter—occurred at the Royal Farms Store in Georgetown, Delaware, within the District of Delaware. Under 28 U.S.C. § 1391(b), the proposed transferee venue is thus a proper one.[10]

The Court now undertakes an evaluation of whether transfer is warranted in this case, relying on the four factors enumerated in *Lynch* as a guide. With respect to the first *Lynch* factor, the Plaintiffs' choice of venue, while it is true that "a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection to the matter in controversy." *Lynch*, 237 F. Supp. 2d at 617 (citing *Dicken*, 862 F. Supp. at 92–93). In the case at bar, though Maryland has some connection to the action as the state where Defendants' headquarters are located, the conduct giving rise to Plaintiffs' claims unquestionably occurred in Delaware. Accordingly, while Plaintiffs' choice of forum "is entitled to some deference, that deference is limited." *Id.*

---

[10] The question of personal jurisdiction over Defendants is not at issue, as Defendants themselves have affirmatively requested transfer to the District of Delaware and have thus manifested their consent to the personal jurisdiction of that court. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–04 (1982); *see also ECB USA v. Savencia, S.A.*, Civ. No. 19-731, 2020 WL 11762200, at *7–*10 (D. Del. July 10, 2020).

The second *Lynch* factor, minimizing inconvenience to witnesses, relates to Defendants'

primary argument in support of transfer, namely, that the District of Delaware offers a more

convenient forum than does the District of Maryland. "The party asserting witness inconvenience

has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and

their potential testimony to enable the court to assess the materiality of evidence and the degree of

inconvenience." *Koh v. Microtek Int'l*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).

Here, Defendants attach to their motion a printout from Google Maps which shows the

driving distance between the Royal Farms Store and the courthouse for the District of Delaware[11]

as well as the difference between the Store and the Edward A. Garmatz Courthouse in Baltimore,

where this Court sits. ECF 9-4. The Google Maps printouts show that the driving distance between

the Royal Farms Store and the courthouse for the District of Delaware is approximately 85 miles

and represents a drive of between 80 and 100 minutes. ECF 9-4, at 1. The available routes between

the Royal Farms Store and the Garmatz Courthouse, by contrast, span an estimated distance of

between 100 and 140 miles, with corresponding estimated driving times of between 110 and 135

minutes. *Id.* at 2. These printouts do not appear to account for any traffic that may occur en route,

particularly on the suggested route from the Royal Farms Store to Baltimore, which crosses the

Chesapeake Bay Bridge. The Court appreciates that the drive from the Royal Farms Store to the

Garmatz Courthouse could well be significantly longer than the one from the Store to the

Wilmington courthouse for the District of Delaware, especially when traffic congestion is factored

in. As such, this distance and time differential is likely to present a substantial burden to the

---

[11] While the Google Maps printout internally indicates that one set of directions is to the Garmatz Courthouse, it provides only that the other is to 844 N King Street, Wilmington, Delaware 19801. ECF 9-4, at 1–2. Pursuant to Federal Rule of Evidence 201(b), the Court takes judicial notice of the fact that the address provided is that of the J. Caleb Boggs Federal Building, where the United States District Court for the District of Delaware is located.

witnesses who are largely based in Delaware. Indeed, Defendants contend, and Plaintiffs do not deny, that most of the witnesses in this case are in fact located in Delaware rather than in Maryland and would therefore be impacted by the length of the drive. *See* ECF 9, at 17; ECF 13-2, at 20.

Plaintiffs attempt to argue that the testimony of three of their identified witnesses, who are Baltimore-based corporate employees of Defendants, is especially pertinent and therefore the action should be kept in the District of Maryland. *Id.* However, this is a less relevant consideration for evaluating potential witness inconvenience than the one offered by Defendants. Plaintiffs have identified only three Baltimore-based employees who might serve as witnesses, and they claim that their one Delaware-based witness "will easily travel to Maryland for this litigation." *Id.* Defendants, however, aver that a substantial number of "presently known witnesses" reside in Delaware, including employees and customers of the Store who witnessed the incident, police officers who responded to the incident, and Paul McCarter's treating physicians. ECF 9-1, at 16. Defendants also note that Shorter, the assailant, "is incarcerated in Delaware, and it is substantially easier to depose him" and bring him to trial in Delaware than in Maryland. *Id.* Plaintiffs do not deny the presence of such witnesses in Delaware but only attempt to argue that the eyewitnesses' in-person testimony would be unnecessary and that evidence regarding the Delaware State Police investigation into the incident may be obtained by subpoena. ECF 13-2. But Plaintiffs do not address how the testimony of other witnesses, particularly Shorter, could more practicably be obtained in Maryland as opposed to Delaware, given the distance differential between the two courts. Nor do they acknowledge the possibility that the evidence they themselves seek from the corporate employees might also be obtained through subpoena. On the whole, with the majority of potential witnesses unquestionably residing in Delaware, the Court finds that the second *Lynch* factor weighs in favor of transfer.

Turning to the third *Lynch* factor, the convenience of the parties, the Court notes that Plaintiffs generally argue that Maryland would be most convenient for the *Defendants* but do not necessarily take the position that it would be more convenient for *themselves*. ECF 13-2, at 21. They argue that Defendants could practicably "coordinate with [ ] Plaintiffs" and facilitate witness testimony "via Zoom remote video conference and/or have Defendants' witnesses travel to Baltimore City, Maryland to conduct a discovery deposition." *Id.* The Court is not persuaded by this rationale, in large part because Defendants themselves are requesting the transfer, undermining Plaintiffs' argument that keeping the case in Maryland would be more convenient for Defendants. And transfer to the District of Delaware would, as noted above, be more convenient for most witnesses, and, in turn, Defendants, to conduct depositions and other trial preparations there. Plaintiffs do not advance any argument that Maryland would be more convenient for them, nor do they conversely suggest that Delaware would be inconvenient. Indeed, Plaintiffs have stated that they are residents of Tennessee, *see* ECF 1-2, at 4 ¶¶ 1–4, and are as such already located several hundred miles from both Maryland and Delaware. The Court concludes that conducting the case in either Delaware or Maryland "will, therefore, visit a similar burden on [Plaintiffs] regardless." *Smellie v. Marriott Int'l, Inc.*, Civ. No. 23-2121-PX, 2023 WL 7487183, at *4 (D. Md. Nov. 13, 2023).

Finally, the Court is satisfied that the final factor, the interest of justice, would be best served by transfer to the District of Delaware. While "[t]his factor is 'amorphous and somewhat subjective,'" *Menk*, 713 F. Supp. 3d at 139 (quoting *Kimber v. Plus3 IT Sys., LLC*, Civ. No. 18-3046-ELH, 2019 WL 1518970, at *6 (D. Md. Apr. 5, 2019)), evaluation of the interest of justice "includes, *inter alia,* 'the court's familiarity with applicable law,'" *Lynch*, 237 F. Supp. 2d at 618 (quoting *Bd. of Trs., Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Cond., Inc.*, 702 F.

Supp. 1253, 1260 (E.D. Va. 1988)). Other factors include docket conditions, the possibility of

unfair trial, and the possibility of harassment. *Baylor Heating*, 702 F. Supp. at 1260.

Plaintiffs oppose transfer on the grounds that the interest of justice would be better served

by allowing "Maryland residents [ ] to hear" about the store security procedures and policies of

the Maryland-based Defendants. ECF 13-2, at 22. The Court is not persuaded by this argument.[12]

And Plaintiffs are not correct that transfer to the District of Delaware would result in "prejudice"

to their claims because of Delaware's statute of limitations as the relevant question in that regard

is not when the case will be transferred to the District of Delaware but rather when it was originally

filed. *See In re Winstar Commc'ns, Inc.*, 591 F. App'x 58, 60 (3d Cir. 2015) (holding that the

question of the applicable statute of limitations for a transferred case turns on the date of

"commencement of [the] suit"). Here, the record is clear that Plaintiffs originally brought their

claim in Maryland state court on August 22, 2024, *see* ECF 1-2, at 2, within what they represent

is the two-year statute of limitations under Delaware law, calculated either from the date of the

assault on Paul McCarter (September 7, 2022) or from the date of his death (September 13, 2022),

ECF 13-2, at 22. Instead, because the torts alleged occurred in Delaware and thus Delaware law

governs the claims, federal district judges sitting in Delaware "are undoubtedly familiar with that

law," more so than, typically, are federal district judges sitting in other states, including Maryland.

*Lynch*, 237 F. Supp. 2d at 618. Because the interest of justice weighs in favor of transfer to the

district where judges are more likely to be familiar with the relevant law applicable to this case,

---

[12] Indeed, the concern for trial fairness in evaluating a motion to transfer may even weight this factor in Defendants' favor and Plaintiffs' disfavor. Where trial in one judicial district may result in "harassment" of a party, the interest of justice is best served by conducting trial in another district. *See Weathersby-Bell v. Washington Metro. Area Transit Auth.*, Civ. No. 19-3474-GJH, 2020 WL 4501485, at *5 (D. Md. Aug. 4, 2020). Plaintiffs' argument regarding the "need," ECF 13-2, at 22, for Marylanders to hear the case could implicate this sort of prejudice to Defendants.

and because the other three factors discussed likewise weigh in favor of transfer, the Court grants

Defendants' motion to transfer this action to the District of Delaware.

### E.    Sanctions

As a final matter, the Court addresses Defendants' motion for sanctions against Plaintiffs'

counsel. ECF 17. Defendants allege a concerning series of events, including Plaintiffs' counsel's

*ex parte* communication with a manager at the Royal Farms Store despite Defendants' status as

represented parties. ECF 17-1, at 5. According to Defendants, Plaintiffs' counsel called the

Assistant Store Leader at the Store to ask for a "copy of Royal Farms' video footage of the

September 7, 2022" incident and, when he was not given the footage, to request that the Assistant

Store Leader "take photographs of information stored in the computer that is accessible only to

Royal Farms' employees and then to provide that information to him." *Id.* Further, Defendants

point out one of the exhibits offered by Plaintiffs at ECF 13-15, which indicates that Plaintiffs'

counsel served a Maryland state subpoena on the Delaware State Police without taking "steps to

obtain a foreign subpoena." *Id.* Finally, Defendants cite Plaintiffs' counsel's failure to abide by

the Court's rules regarding redaction of Paul McCarter's identifying information and the name of

minor Plaintiff A.F. as grounds for sanctions. Defendants ask for a protective order, the

disqualification of Plaintiffs' counsel, and for Plaintiffs' counsel to pay for Defendants' fees. *Id.*

at 15. Plaintiffs' counsel argues in response, essentially, that any infractions were *de minimis*.

ECF 20, at 3–5.

"[D]istrict courts have the 'inherent power' to sanction a party, including entry of default

or dismissal of an action, when a party abuses the judicial process at a level that is utterly

inconsistent with the orderly administration of justice or undermines the integrity of the process."

*Sol v. Longang*, Civ. No. 22-02999-AAQ, 2025 WL 1257995, at \*4 (D. Md. Apr. 30, 2025)

(quoting *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 373–74 (4th Cir. 2013)). The

18

Court is not persuaded that such drastic steps, including disqualification, are warranted here. However, the Court will order Plaintiffs' counsel to abide by the Maryland Rules of Professional Conduct regarding communications with represented parties, in particular Rule 4.2.[13]  Failure to abide by all applicable federal and state rules governing the actions of counsel and the course of this litigation may result in more severe sanction.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to issue subpoenas is DENIED; Plaintiffs' motion to supplement is GRANTED in part and DENIED in part; Defendants' motion to dismiss is DENIED; Defendants' motion to transfer venue is GRANTED; and Defendants' motion for sanctions is GRANTED in part and DENIED in part.  Further, the Court ORDERS that the version of the complaint provided at ECF 1, including minor child A.F.'s full name, and the exhibit at ECF 13-10, containing photographs of Paul McCarter in the hospital, shall be SEALED.

A separate implementing Order will issue.

Dated: June 5, 2025                                        /s/
                                                          Brendan A. Hurson
                                                          United States District Judge

---

[13] The official commentary to Rule 4.2 provides that, "[i]n the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with **persons having a managerial responsibility on behalf of the organization,** and with **any other person whose act or omission in connection with that matter may be imputed to the organization** for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."  Commentary to Maryland Rule of Professional Conduct 4.2 (emphasis added).  This and the other Maryland professional responsibility rules have been adopted in this Court.  *See* Loc. R. 704 (D. Md. 2023).